IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:17-CR-121-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELTON EUGENE WARREN, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 26). Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Robert T. Numbers, II, issued memorandum and recommendation ("M&R"), wherein it is recommended that the court deny defendant's motion. (DE 38). Defendant timely filed objections to the M&R, (DE 45), and the government did not respond. For the reasons that follow, the court adopts the recommendation of the magistrate judge as its own and denies defendant's motion.

## STATEMENT OF THE CASE

On September 21, 2017, the grand jury returned indictment, charging defendant with four counts of distribution of a quantity of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), one count of possession with the intent to distribute 28 grams or more of crack in violation of 21 U.S.C. § 841(a)(1), one count possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and one count possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).

On February 19, 2018, defendant filed the instant motion to suppress evidence seized from 1) a trash pull conducted by officers on April 21, 2017 from defendant's garbage can outside

defendant's home and 2) a search of defendant's home on April 27, 2017.

Evidentiary hearing was held before the magistrate judge on April 17, 2018, at which hearing the court received testimony from Brian Thompkins ("Thompkins") and Thomas Tew ("Tew"), both of whom conducted the April 21, 2017 trash pull, although only Thompkins was involved in the April 27, 2018 search of defendant's home. Following hearing, both the government and defendant filed supplemental memorandum. The magistrate judge issued M&R thereafter, on August 23, 2018.

In objections to the M&R, defendant makes two arguments. First, defendant argues the April 21, 2017 trash pull was unconstitutional in that defendant's lawn was within the curtilage of his home, and even if it was not, law enforcement officers were not allowed to "unearth evidence" as found in the trash. Second, defendant argues that at the time officers searched defendant's home, they were not in possession of a valid warrant, rendering the April 27, 2017 search of defendant's home unconstitutional.

## STATEMENT OF THE FACTS

The court incorporates herein statement of facts in section I of the M&R, as relevant to the instant motion, where such statement accurately reflects the evidence of record:

In February 2017, a source told Fayetteville Police Detective Brian Thompkins that Warren was distributing cocaine in Fayetteville. Tr. of Evidentiary Hr'g at 6:3–4, 7:16–22, D.E. 34. Thompkins subsequently arranged for his source to purchase cocaine from Warren on four separate occasions in February and March 2017. Tr. at 8:21–23; 9:2–3; 11:7–9.

Then, on April 21, 2017, between 4:30 a.m. and 5:30 a.m., Thompkins and Fayetteville Police Detective Thomas Tew arrived at Warren's home to conduct a trash pull. Tr. at 14:1–4, 13–14; 63:7–8. Thompkins, who has conducted hundreds of trash pulls, explained that it is his general practice to approach the residence, take the garbage from the curb, place it into his vehicle, and drive to a well-lit area away from the property to examine it. Tr. at 14:18–21, 15:18–24. Thompkins also testified that an officer must be able to access the trash while standing in the road. See tr. at 44:7–11. Thompkins went on to state that, "[i]f the can is not on the curb where it's

readily accessible, we don't collect it." Both Thompkins and Tew maintained if a garbage can was not readily accessible, they would leave and wait for the next collection day to try again. Tr. at 14:25–15:1; 67:25; 68:2–5.

Prior to arriving at Warren's home, the detectives learned that the City of Fayetteville was scheduled to collect Warren's trash that day. Tr. at 14:4–6; 64:15–17. As the officers arrived, they noted that Warren's neighbors had placed their garbage at the curb. Tr. at 14:6–8; 43:10–12. He said that Warren's trash cans were located "in the general area of the curb[,]" but he could not recall whether they were sitting on the curb or in the grass adjacent to the curb. Tr. at 68:16–17. Tew also testified that Warren's trash was "at the road" and "in the collection area[,]" but he was not sure if the garbage was on the road itself or in the grass. Tr. at 65:13–14, 19–20. The cans were not up against the garage like at other times during the week and Thompkins could reach Warren's trash cans while standing on the public street. Tr. at 19:4–14, 43:25–44:1, 7–8. Although the Government did not present testimony about the exact distance from Warren's home to the edge of the property, photographic evidence shows that the trash cans were more than two car lengths from Warren's home. See Gov. Ex. 2; Gov. Ex. 7.

After collecting Warren's trash, the detectives searched it and found loose, discarded marijuana and thirty sandwich bags with the corners cut off them. Tr. at 19:25–20:4. Tew explained that, in his experience, drug dealers tear the corners off plastic bags and use the corners to package drugs for sale. Tr. at 66:22–67:9.

Several days after the trash pull, Thompkins appeared before North Carolina Superior Court Judge Claire Hill seeking a warrant to search Warren's home. Tr. at 23:16–20; 24:6–8. Thompkins submitted an affidavit with his search warrant application that described Warren's property and included a property map, an address for Warren's home, and a summation of the evidence law enforcement wanted to seize. Tr. at 28:5–7, 9–12; see Gov. Ex. 15. The affidavit also contained an explanation of the controlled buys and the results of the trash pull. Tr. at 26:5–9, 18–20, 24–27:7, 19–22; 28:2–4.

Judge Hill reviewed the affidavit and signed each of its eight pages. Gov. Ex. 15; Tr. at 24:6–8; 29:4–6; 49:23; 53:24–25. Thompkins swore to the truth of the facts in the affidavit. Tr. at 29:4–7. Judge Hill also signed the search warrant application. Gov. Ex. 15; Tr. at 25:10–13. Thompkins forgot to write Warren's address on the first page of the search warrant, so Judge Hill wrote it in and then initialed next to it. Tr. at 5:12–13; 53:19–23; see Gov. Ex. 15. But Judge Hill did not sign the search warrant. Tr. at 61:7–8. Judge Hill later claimed that her failure to sign the warrant was "an administrative oversight" and that she authorized the search of Warren's home. Hill Aff. ¶¶ 7, 8, Gov. Ex. 1.

Although Thompkins did not notice that Judge Hill failed to sign the warrant, he

understood that she had granted the warrant. Tr. at 60:16–18; 61:3–8. The next day,
law enforcement searched Warren's home and seized items including controlled
substances and a firearm. Tr. at 29:8–13; 30:21–24; see 31:9–11. Later, a federal
grand jury indicted Warren on several drug and gun-related charges. D.E. 1.

(M&R (DE 38) at1-3).

## COURT'S DISCUSSION

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which

specific objections are filed.  28 U.S.C. § 636(b).  The court does not perform a de novo review

where a party makes only "general and conclusory objections that do not direct the court to a

specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687

F.2d 44, 47 (4th Cir. 1982).  Absent a specific and timely filed objection, the court reviews only for

"clear error," and need not give any explanation for adopting the M&R.  Diamond v. Colonial Life

& Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.

1983).  Upon careful review of the record, "the court may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.    Analysis

1.    April 21, 2018 Trash Pull

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S.

Const. amend. IV, including the area surrounding the home known as the curtilage, Florida v.

Jardines, 569 U.S. 1, 6–7 (2013).  The test used to determine the boundaries of a home's curtilage

is not "a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all

extent-of-curtilage questions."  United States v. Dunn, 480 U.S. 294, 301 (1987).  In Dunn, the

Supreme Court instructed "that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id.[1]

Defendant first argues that the Magistrate Judge erred in determining that defendant's front lawn should not be considered curtilage for Fourth Amendment purposes by applying Dunn, which defendant asserts is inapposite to the current situation, stating:

> In the case now before this Court, the trespassed area is not a ranch consisting of open fields, but instead is the Defendant's front lawn. Instead of the property being 60 yards away from the home, the trespassed area in this case was, according to the M&R, two car lengths from Defendant's home.

(DE 45 at 2-3).

The Fourth Circuit and other courts in this district have applied the Dunn test to determine the boundaries of a home's curtilage even where the land at issue did not consist of literal open fields and where alleged trespassed area was feet from a person's dwelling. See United States v. Jackson, 728 F.3d 367, 374 (4th Cir. 2013) (applying Dunn and finding apartment's curtilage did not extend to the strip of grass beyond the apartment's back patio and therefore officers did not commit Fourth Amendment violation when pulling trash bags from trash cans on that strip of grass); United States v. Makell, 721 F. App'x 307, 308 (4th Cir. 2018) ("Applying these factors, we find that the common hallway of the apartment building, including the area in front of Makell's door, was not within the curtilage of his apartment."); Norton v. City of Whiteville, No. 7:16-CV-300-BO, 2017 WL 912018, at *3 (E.D.N.C. Mar. 7, 2017) (applying Dunn and holding officer's vehicle,

---

[1] Courts consider property located outside the curtilage to be an "open field" that is not entitled to Fourth Amendment protection. Oliver v. United States, 466 U.S. 170, 180 (1984). Despite what its name implies, "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." Id. at 180 n. 11.

which pulled "a few feet into what appears to be plaintiff's driveway" was not "within the curtilage of plaintiff's home, and plaintiff did not have a legitimate expectation of privacy therein").

In this case, the magistrate judge correctly applied the <u>Dunn</u> factors, finding each factor weighed weighed in favor of the conclusion that "the trash cans resided in a portion of Warren's property that constituted an open field. The detectives thus did not need a warrant before breaching the plane of Warren's property to access the garbage cans." (M&R (DE 38) at 9); <u>see also</u> <u>Jackson</u>, 728 F.3d at 374 ("we affirm the district court's conclusion that the officers here pulled the trash bags from a trash can located outside the apartment's curtilage. Because they did not physically intrude upon a constitutionally protected area, we conclude that Jackson cannot prevail under the property-based approach to the Fourth Amendment articulated in <u>Jardines</u>.").

Defendant does not object to the way in which the magistrate judge weighed each <u>Dunn</u> factor. However, defendant argues that even if this court finds that defendant's front lawn should not be considered the curtilage of his home, but an "open field" as found in <u>Dunn</u>, the evidence found by the officers must still be suppressed. (DE 45 at 3). In support, defendant cites to the Fifth Circuit holding that "[n]either this court nor the Supreme Court have extended the open fields doctrine to anything beyond observation searches," ultimately holding that officers violated the plaintiff's Fourth Amendment rights because the plaintiff had a reasonable expectation of privacy "in the land under an open field." <u>Husband v. Bryan</u>, 946 F.2d 27, 29 (5th Cir. 1991).

Here, however, <u>Husband</u> is distinguishable.[2] As stated, in <u>Husband</u>, the court found that

_____

[2] Defendant's citations to <u>Bond v. United States</u>, 529 U.S. 334, 335 (2000), holding a Fourth Amendment violation where law enforcement officer "physical manipulat[ed] a bus passenger's carry-on luggage," and <u>United States v. Beene</u>, 818 F.3d 157, 163 (5th Cir. 2016), holding the government need not "provide justification for the dog's presence under the open-fields doctrine," are likewise inapplicable to the facts of the instant case.

plaintiff had a reasonable expectation of privacy in the land under the open field, whereas here, plaintiff had no reasonable expectation of privacy because he had put the trash cans out for collection. The Supreme Court has held as follows:

> [W]e conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

California v. Greenwood, 486 U.S. 35, 40–41 (1988) (citations omitted); see also United States v. Crowell, 586 F.2d 1020, 1025 (4th Cir. 1978) ("absent proof that a person has made some special arrangement for the disposition of his garbage inviolate, he has no reasonable expectation of privacy with respect to it once he has placed it for collection. The act of placing it for collection is an act of abandonment and what happens to it thereafter is not within the protection of the fourth amendment.").

Although defendant argued in his motion to suppress that the garbage can at issue "was located within the border of Defendant's property," and "in order to access the Defendant's garbage can, Tompkins had to enter upon, and cross, a portion of Defendant's lawn as the garbage can had not been placed into the public street for pick up," (DE 26 at 3), defendant offered no evidence or at hearing or in briefing to support his assertion that the garbage can had not been placed into the public street for pick up and Tompkins and Tew provided uncontroverted testimony otherwise.

First, Tompkins testified that he had confirmed that the day he and Tew performed the trash pull "was a regularly scheduled pick up day for trash in that neighborhood," as found on the City of Fayetteville official website and as evidenced that defendant's "garbage was placed on the curb as other cans in the neighborhood were." (DE 34 at 14). Tompkins additionally testified that in the hundreds of trash pulls he's conducted in his career, he has "never entered someone's yard to collect garbage," stating "[i]f the can is not on the curb where it's readily accessible, we don't collect it." (Id. at 14-15). Tompkins testified the trash was on the curb and not located "up against the garage itself," where the trash was sometimes located, although Tompkins could not recall if the trash cans were "on the grass or on the pavement," in front of defendant's home. (Id. at 19, 43-44; see also id. at 44 ("I was on the roadway when I grabbed the cans, which I can't remember if they were -- at what stage of the curb they were on, were they abutting it, were they in the roadway, were they right there on the concrete as opposed to the asphalt but – Q. Or were they on the grass? A. if they were right beside, but I do know that my feet were on asphalt when I collected those cans and that's kind of a litmus test we use -- we've been faced in the past with those cans that are just outside and you just have to walk away from them."); see also id.("if it's obvious that it is abandoned on the curb for regular scheduled pick up and you are where you're allowed to be, you can collect them").

Second, Tew also testified that the "trash was in there to be picked up at the road," clarifying that "It was close to the road. I'm not sure if it was on the roadway or in the grass area but it was in the collection area that would be reasonably be left there to be picked up." (Id. at 65).[3]

---

[3] Additionally, even if defendant is correct and the trash cans had not been placed in the public street for pick up, it is uncontroverted the trash cans were next to the road, not against the garage where sometimes the trash cans were located. (See DE 34 at 19, 36). The Fourth Circuit has held that a defendant has no expectation of privacy, and the Supreme Court's holding in Greenwood controls, even where a defendant had not taken his trash to where the sanitation worker collected it, but where "the trash can was sitting in the common area of the apartment complex courtyard, which included the grass areas and common sidewalks, readily accessible to all who passed by," not "locked to the laundry pole

The court holds that officers did not violate defendant's Fourth Amendment rights by conducting the April 21, 2018 trash pull. Accordingly, the court denies defendant's motion to suppress as to this issue.

2.     April 27, 2018 Search of Defendant's Home

The Fourth Amendment additionally provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Defendant argues to the court the same argument made to the magistrate judge, that at the time the officers searched defendant's home, the officers were not in possession of a valid warrant because the "officers that executed the search had no objective reason to believe Judge Hill had issued a search warrant for Defendant['s] home," further asserting that the magistrate judge's reliance on United States v. Lyons, 740 F.3d 702 (1st Cir. 2014) was misplaced in that in Lyons, but not here, "the issuing judge had specifically made indicated (sic) a finding that there was probable cause to search." (DE 45 at 4-5).

In Lyons,

The police seeking to search Lyons's home completed a written application to search it and swore in support of that application. The application recited facts establishing probable cause. The state judge reviewed the application, determined that probable cause existed, signed the application, and signed the accompanying affidavit. The warrant described particularly the place to be searched, and the persons or things to be seized. The judge, however, unintentionally forgot to sign the warrant itself before the officers conducted the search. The following day, after the search was complete, state law enforcement officials noticed the omission. The prosecutor promptly returned that day to the same judge, who belatedly signed the warrant, at the same time writing a note explaining that his failure to sign previously "was inadvertent and of no substantive consequence."

───────────────────────

closest to the residence back door, where it was normally located." Jackson, 728 F.3d at 375.

740 F.3d at 724 (emphasis added). When turning to the argument made by the government in support of the First Circuit's conclusion that the state judge reviewed the application and determined probable cause existed, the government argued as follows: "He signed the last page of Trooper Russolillo's affidavit, as well as the warrant applications attached to the warrants. And when he was notified the next day of his failure to sign the actual warrants, he made clear that this omission was 'inadvertent and of no substantive consequence.'" UNITED STATES OF AMERICA, Appellee, v. Todd LYONS and Daniel Eremian, Defendants-Appellants., 2013 WL 1914536 (C.A.1), 32-33 (citations omitted).

As found by the magistrate judge, the facts before the court are similar to those before the court in <u>Lyons</u>, including evidence of a finding of probable cause:

> Thompkins submitted a warrant application and a supporting affidavit to a state court judge. The submitted documents described the person, place, and things officers wanted to search and the items they intended to seize with particularity. Thompkins swore under oath to the truth of the matters in his affidavit. Judge Hall signed the documents in several places and added Warren's address to the warrant when she noticed it was missing. After Judge Hall learned that she had not signed the warrant, she explained that her failure to sign it was an administrative oversight and that she fully intended to issue the warrant.

(M&R (DE 38) at 11-12).

The only significant difference the court can discern between the present case and <u>Lyons</u> is that in <u>Lyons</u>, the mistake was caught the day after execution of the warrant and remedied at that time whereas here, the mistake appears to have not been caught until much later. Notwithstanding, although defendant argues otherwise, the evidence in support of a finding of probable cause made by the judge in <u>Lyons</u> versus here is nearly indistinguishable. The Fourth Circuit has not addressed this issue, and the only other appellate court who has directly confronted this issue, the Tenth Circuit, has adopted the reasoning of <u>Lyons</u>. <u>See</u> <u>United States v. Cruz</u>, 774 F.3d 1278, 1286 (10th

10

Cir. 2014); see also United States v. Jackson, 617 F.Supp.2d 316, 320-22 (M.D.Pa.2008) (collecting cases) (unsigned search warrant contained sufficient indicia of issuance to satisfy Fourth Amendment requirements).[4]

Defendant does not challenge the warrant issued on the ground that officers lacked probable cause to conduct the search, save for the procedural irregularity of the lack of signature. Given the weight of authority in support of so holding, the court holds that officers did not violate defendant's Fourth Amendment rights by executing the inadvertently unsigned warrant. Accordingly, the court denies defendant's motion to suppress regarding April 27, 2018 search of defendant's home.[5]

## CONCLUSION

Based on the foregoing, upon careful review of the M&R and the record, the court ADOPTS the recommendation of the magistrate judge as its own. Defendant's motion to suppress (DE 26) is DENIED.

SO ORDERED, this the 27th day of November, 2018.

LOUISE W. FLANAGAN
United States District Judge

---

[4] In United States v. Lipford, 203 F.3d 259, 269–70 (4th Cir. 2000), the Fourth Circuit has held that unsigned copies of a warrant were "at most, a technical violation of Federal Rule of Criminal Procedure 41(d), and not a violation of the Fourth Amendment."

[5] Given the court's holding above, the court need not address defendant's argument that no good-faith exception applies in this case. (See DE 45 at 6 (citing United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996) (holding the "good-faith exception does not apply in four situations" including where "the warrant is so 'facially deficient' that an officer could not reasonably rely on it."))).